FILED
Samuel L. Kay, Clerk
United States Bankruptcy Court
Augusta, Georgia
By jpayton at 4:58 pm, Dec 21, 2011

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | | |
|---|---|---|
| IN RE: | ) | Chapter 12 Case |
| SIDNEY J. PRESCOTT | ) | Number 11-10789 |
| | ) | |
| Debtor | ) | |

### ORDER

Before the Court is the Objection to Confirmation filed by Southern Bank ("the Bank") objecting to the 5% per annum interest rate and 25-year amortization of its debt proposed by Sidney J. Prescott's ("Debtor's") chapter 12 plan. This is a core proceeding pursuant to 28 U.S.C. §157 and the Court has jurisdiction under 28 U.S.C. §1334.

The parties agree the Bank is an oversecured creditor entitled to attorney's fees and interest. Debtor has one loan with the Bank with an approximate balance as of the hearing date of $353,078.11; and he is the guarantor[1] of a loan with the Bank with an approximate balance of $72,944.27 as of the hearing date. Currently, these loans are respectively collateralized by real estate and equipment. The undisputed value of the real estate is substantially more than the debt; and the equipment is worth at

---

[1] This loan is between the Bank and Idlewood Farms, Inc. Debtor is the sole shareholder of Idlewood Farms, Inc.

AO 72A
(Rev. 8/82)

least the amount of the debt. Debtor values the real estate at $549,256.00 in his plan and schedules, and the Bank does not contest this valuation. Debtor's chapter 12 plan proposes to combine the two loans into one loan and treat the Bank's combined $430,985.42[2] claim as follows:

> This creditor shall retain its existing lien position to the extent of value and shall be paid $410,476.51[3] plus interest at 5.00% per annum based on a 25 year amortization. Semiannual payments in the amount of $14,548.44 shall be paid on April 25, 2011 [sic] and October 25, 2011 [sic] and continuing on April 25 and October 25 of each consecutive year thereafter.

Plan, Dckt. No. 40.

Debtor is a family farmer mainly selling cattle and hay. Like most farmers, his monthly income fluctuates widely. He testified his best months generally are April and October when he sells cattle and hay. He also receives a government subsidy for the growing of hay.

Debtor testified that his hay currently is bringing a good

---

[2] This includes the $4,963.04 in attorney's fees which Debtor agrees should be part of the Bank's claim.

[3] The parties have agreed for the attorney's fees to be added. Debtor also will need to amend his plan to: provide for the appropriate amount of the claim; correct the typographical error of the April and October "2011" date; to address several other stipulated settlements reached with his other creditors; and to address the payment of intangible tax, if due and payable.

2

price. Weather conditions have resulted in a scarcity and he was able to produce a viable crop. In addition, he has a significant number of cows ready to sell. At the hearing, I found Debtor's testimony credible and that the proposed plan is feasible.

The parties have three basic disagreements. First, the Bank argues the proposed 5% interest rate is inadequate. Second, the Bank contends the 25-year amortization and repayment period is too long. Finally, the Bank contends the proposed semi-annual payments are inappropriate. For the reasons set forth below, I disagree.

Chapter 12 of the Bankruptcy Code is designed to provide family farmers with the opportunity to save their farms, restructure their debts and continue farming. See In re Watford, 898 F.2d 1525, 1528 (11th Cir. 1990). Since the Bank has not accepted the plan and Debtor is not surrendering the collateral, I must determine if the plan complies with §1225(a)(5)(B)(i) and (ii). There is no dispute the plan provides for the Bank to retain its lien, thus complying with §1225(a)(5)(B)(i). The issue is whether the plan adequately provides for "the value, as of the effective date of the plan, of property to be distributed . . . under the plan on account of such claim is not less than the allowed amount of such claim." 11 U.S.C. §1225(a)(5)(B)(ii).

First, the Bank argues the proposed 5% interest rate is

3

inadequate. For purposes of this analysis, the parties agree that the prime interest rate is 3.25%. The plan provides for an 1.75% increase over prime, namely an interest rate of 5% per annum. The issue of the appropriate interest rate was addressed in Till v. SCS Credit Corp., 541 U.S. 465 (2004), where the U.S. Supreme Court held that the "formula" or "risk plus" analysis is the appropriate method for determining the rate of interest. Id. "The courts and commentators have generally treated the question of how the cramdown interest rate should be determined as a question that is answered the same in Chapter 11, 12, and 13 cases. David G. Epstein, Don't Go and Do Something Rash about Cram Down Interest Rates, 49 Ala. L. Rev. 435, 439-442 (1998)(footnotes omitted); see also In re Till, 301 F.3d 583 (7th Cir. 2002), cert. granted, Till v. SCS Credit Corp., 539 U.S. 925 (2003)(Chapter 11, 12, and 13 cramdown provisions are analogous); In re Hudson, 2011 WL 1004630 *6 (Bankr. M.D. Tenn. March 16, 2011)(applying Till in a chapter 12 case); In re Torelli, 338 B.R. 390, 396 (Bankr. E.D. Ark. 2006)(utilizing the Till approach in a chapter 12 case). For these reasons, I find the Till approach is appropriate in chapter 12 cases.

Under Till, the prime rate serves as a base rate and is adjusted for the following risks of default: "(1) the probability of plan failure; (2) the rate of collateral depreciation; (3) the liquidity of the collateral market; and (4) the administrative

4

expenses of enforcement." Id. at 484 (citation omitted). The Supreme Court stated that adjustments of 1% to 3% are generally approved. Id. at 480. The burden of proof is on creditors to present evidence to support a higher rate than the prime rate. Id. at 484-85. Furthermore, under Till, the parties' original contract rate of interest is irrelevant. See First United Sec. Bank v. Garner (In re Garner), 2011 WL 5979019 *2 (11th Cir. Nov. 30, 2011)(a creditor is no longer entitled to the contract interest rate because once the debtor invokes the "cramdown" power, "the creditor's rights, including the rate of interest, are subject to modification in bankruptcy.").

As previously addressed at the hearing, I found the proposed plan to be feasible. Given the Debtor's experience and the nature of his operations, I think it is probable that the plan will succeed. The Bank argues the equipment is a depreciating asset valued at the $73,000.00 outstanding debt, therefore, the Bank contends the proposed interest rate does not protect it from depreciation. I disagree. The equipment portion of the loan is small in comparison with the real estate portion. In addition, the plan combines the loans into one loan secured by the real estate and the equipment. The parties acknowledge there is sufficient equity in the real estate to more than cover any value discrepancy with the equipment. Real estate traditionally is not a depreciating asset

5

and the fact that the Bank's claim is significantly over-secured affords the Bank protection. See <u>In re Carruthers</u>, 2000 WL 35798995 *7 (Bankr. S.D. Iowa. Sept. 28, 2000)(while acknowledging the equipment will depreciate, the court found the creditor was sufficiently protected by the equity in the real estate and by the fact that each plan payment increases the equity). Finally, the Bank did not prove the real estate would not realize its value at a sale; nor did the Bank put on evidence warranting an increase in the interest rate regarding the expenses associated with enforcement. After considering the matter, I find the Bank did not carry its burden to show the need for any greater interest rate over the proposed 5% rate. Furthermore, I find the proposed 5% interest rate provides the Bank with the present value of its claim.

The Bank also objects to the amortization of its loan over a term of 25 years. The Bank argues with interest rates at an all time low, the proposed 25-year term locks the Bank into this low rate for too long. The Bank also points out that one of the loans has already matured and the other loan was scheduled to mature in 2013. Given the maturity schedule, the Bank argues that stretching the amortization out over 25 years is inappropriate. I disagree.

Pursuant to 11 U.S.C. §1222(b), the Debtor has the statutory ability to "modify the rights of holders of secured claims, or of holders of unsecured claims, or leave unaffected the

6

rights of holders of any class of claims." 11 U.S.C. §1222(b)(2); Wells Fargo v. Yett (In re Yett), 306 B.R. 287, 295 (B.A.P. 9th Cir. 2004)("A chapter 12 plan may be confirmed over a secured creditor's objection . . . even if the underlying obligation matured prepetition."). A chapter 12 plan may provide for payments of secured claims beyond the length of the plan. See 11 U.S.C. §1222(b)(9)(a chapter 12 plan may "provide for payment of allowed secured claims consistent with section 1225(a)(5) of this title, over a period exceeding the period permitted under section 1222(c)."); Travelers Ins. Co. v. Bullington, 878 F.2d 354, 357 (11th Cir. 1989)(extending a 5 year loan to 30 years finding that §1222(b)(9) is explicit, thus a plan that provides for 30 year payment does not violate §1225); In re Hudson, 2011 WL 1004630 at *6 (30 years); In re O'Farrell, 74 B.R. 421, 423 (Bankr. N.D. Fla. 1987)(approving a 30 year amortization rate). Given the over-secured nature of the real estate and the Bank's ability to request relief should Debtor fail to comply with the terms of its confirmed plan, I find Debtor's proposed 25-year amortization proposal complies with 11 U.S.C. §1225.

This same analysis applies to the Bank's argument against the proposed semi-annual payments. Given the nature of Debtor's operations and cyclical income, I find semi-annual payments are appropriate and in compliance with 11 U.S.C. §1225. See In re

7

O'Farrell, 74 B.R. at 424 (stating "the title of Chapter 12 'Adjustment of Debts of a Farmer with Regular *Annual* Income' and the definition of family farmer with regular income indicate that annual payments are permissible.")(emphasis added).

I also find that the proposed plan provides the Bank with the present value of its claim as required by 11 U.S.C. §1225 and Debtor has shown through his testimony that he has the ability to fund the plan. In re O'Farrell, 74 B.R. at 423-24 ("The Code permits deferred payments over extended periods regardless of the prior financial arrangements between the parties and subsequent acceleration of the obligations due, so long as . . . §1225(a)(5)(B)(i) & (ii) are satisfied; i.e. the mathematical requirements are met, the creditor is adequately protected under the plan, and the debtors prove they can make payments over the life of the plan.").

For these reasons, the Bank's objection to confirmation is ORDERED DENIED. Debtor is allowed to amortize the entire indebtedness of $430,985.42 for 25 years at a rate of 5% interest per annum. Within ten days of the entry of this Order, Debtor shall file a modified plan: setting forth the amount of the claim to include the attorney's fees and to provide for timely payment of any intangible tax (to the extent due and payable); to further

8

incorporate the terms of his prior settlements with other creditors; and to correct the typographical errors regarding the date of payments.

                                                 /s/ Susan D. Barrett
                                                 SUSAN D. BARRETT
                                                 CHIEF UNITED STATES BANKRUPTCY JUDGE

Dated at Augusta, Georgia
this 21st Day of December 2011.

AO 72A
(Rev. 8/82)